No. 00-623

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 168

STATE COMPENSATION INSURANCE FUND,

Insurer and Appellant,

ANDERSON LOGGING COMPANY, INC.,

Employer,

v.

LOWELL McMILLAN,

Respondent.

APPEAL FROM: The Workers' Compensation Court of the State of Montana

Honorable Mike McCarter, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Thomas E. Martello, Special Assistant Attorney General, Montana

State Fund, Helena, Montana

For Respondent:

Allan M. McGarvey and Roger Sullivan, McGarvey, Heberling, Sullivan

and McGarvey, Kalispell, Montana

For Amicus Curiae:

Charles G. Adams and Jacqueline T. Lenmark, Keller, Reynolds, Drake

Johnson & Gillespie, P.C., Helena, Montana (American Insurance Ass'n)

Submitted on Briefs: April 5, 2001

Decided: August 23, 2001

Filed:

_____

Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 The Montana State Compensation Insurance Fund (State Fund) appeals from an order entered by the Workers' Compensation Court disallowing the State Fund's subrogation claim. We affirm.

¶2 The issue on appeal is whether the State Fund's subrogation interest is determined by the claimant's third party judgment against the United States government, which was reduced for the claimant's comparative negligence and resulted in a recovery which was less than his entire loss.

## BACKGROUND

¶3 Lowell McMillan was severely injured in January 1987 when he was struck by a tree felled by a co-worker. McMillan's employer was performing work for the United States government. McMillan filed a workers' compensation claim against his employer, and the State Fund did not dispute liability. He then brought an action against the United States under the Federal Tort Claims Act. After trial in the United States District Court, sitting without a jury, Judge Charles C. Lovell determined that McMillan was entitled to recovery from the United States, diminished by 45 percent for comparative negligence attributable to him. The court determined that McMillan's damages against the United States were

$4,762,686 and, after reduction for his comparative negligence, $2,619,477. The judgment was affirmed by the Ninth Circuit Court of Appeals.

¶4 The State Fund then sought a determination from the Montana Workers' Compensation Court that it may properly assert a subrogation claim against McMillan's recovery from the United States and cease paying benefits to McMillan under the Montana Workers' Compensation Act. The Workers' Compensation Court held that the full measure of claimant's loss was the total damages found by the United States District Court to have been sustained by McMillan, or $4,762,686, and that pursuant to the "made whole" doctrine, McMillan must recover that amount, plus the costs of recovery, before the State Fund is entitled to subrogation.

## DISCUSSION

¶5 This matter was submitted to the Workers' Compensation Court on stipulated facts. Where there are no facts in dispute, we review the lower court's conclusions of law to determine if they are correct. *Henry v. State Fund*, 1999 MT 126, ¶ 10, 294 Mont. 449, ¶ 10, 982 P.2d 456, ¶ 10.

¶6 In workers' compensation cases, the law in effect at the time of the claimant's injury establishes the claimant's substantive right to benefits. *Ness v. Anaconda Minerals Co.* (1996), 279 Mont. 472, 478, 929 P.2d 205, 209. McMillan's injury in January 1987 is governed by §§ 39-71-412 and -414, MCA (1985).

¶7 Section 39-71-412, MCA (1985), authorized a claimant, in addition to the right to receive workers' compensation benefits, to prosecute a cause of action against a third party whose negligence causes the claimant's injury. Section 39-71-414, MCA (1985), provided that an insurer is entitled to subrogation for all benefits paid under the Workers' Compensation Act. While § 39-71-414, MCA (1985), did not address whether the insurer's right of subrogation began before or after the claimant has been made whole for his injuries, this Court has determined that an insurer is not entitled to exercise its subrogation rights until the claimant has been made whole. *Zacher v. American Ins. Co.* (1990), 243 Mont. 226, 231, 794 P.2d 335, 338 (applying the 1983 statute), and *Ness,* 279 Mont. at 480, 929 P.2d at 210 (applying the 1981 statute).

¶8 This equitable limitation on legal subrogation, known as the "made whole doctrine," was first articulated in *Skauge v. Mountain States Tel. & Tel.* (1977), 172 Mont. 521, 565

P.2d 628, and applied to workers' compensation subrogation in *Hall v. State Compensation Ins. Fund* (1985), 218 Mont. 180, 708 P.2d 234. All parties here acknowledge the existence of the doctrine, but also intertwine arguments regarding the applicability and effect of the full legal redress provisions of Article II, Section 16, of the Montana Constitution.

¶9 This Court was faced with identical arguments in *Zacher*. After acknowledging some confusion had been created, the Court clearly resolved the issue by distinguishing the equitable made whole doctrine from the constitutional principle of full legal redress:

> This theory is not dependent upon a right of recovery of full legal redress under the Montana Constitution. It is based upon an equitable balancing of the rights of the insurer as compared to the claimant. . . . [T]he basic conclusion is that when the amount recovered by a claimant is less than the claimant's total loss, with a result that either the claimant or the insurer must to some extent go unpaid, then it is equitable that the loss be born [sic] by the insurer which had been paid an insurance premium for the assumption of its liability. . . . The key aspect is that the insurer has been paid for the assumption of the liability for the claim, and that where the claimant has not been made whole, equity concludes that it is the insurer which should stand the loss, rather than the claimant. . . .

*Zacher, 243 Mont. at 230, 794 P.2d at 338. The made whole doctrine is dispositive of the issue raised here.*

¶10 State Fund argues that the amount necessary to make McMillan whole is $2,619,477, the amount of the judgment entered by the United States District Court based upon its finding that McMillan had been comparatively negligent, plus his attorney fees and costs of recovery. State Fund explains that when the benefits it has paid McMillan are considered, which amount to approximately $850,000, McMillan has received sufficient sums to pay his attorney fees and costs, and personally received $2,619,477. Thus, State Fund asserts that McMillan has been made whole, and it is relieved from making further payments, including medical expenses, domiciliary care, and total disability benefits.

¶11 McMillan argues that the United States District Court's finding that his gross damages were $4,762,686 is the true measure of his total loss, and that the State Fund is not entitled to exercise its right of subrogation by terminating benefit payments until he has received this amount, plus his costs of recovery. The mandate of our prior holdings show that McMillan is correct.

¶12 In *Zacher*, Justice Fred Weber, for the Court, articulated a formula for determining whether a claimant had been made whole:

In determining whether a claimant has been made whole, the amounts received and to be received under the workers' compensation claim shall be added to the amounts otherwise received or to be received from third party claims, and also added to the costs of recovery, including attorney fees; and *when that total equals claimant's entire loss, then the insurer shall be entitled to subrogation from all amounts received by the claimant in excess of his entire loss,* pursuant to sec. 39-71-414, MCA (1983).

*Zacher, 243 Mont. at 231, 794 P.2d at 338 (emphasis added).*

¶13 To apply this formula and determine when an insurer's right of subrogation may be initiated, the amount of the claimant's "entire loss" must be calculated, which is a question of fact. *Ness*, 279 Mont. at 481, 929 P.2d at 211. In *Zacher*, we remanded the case to the Workers' Compensation Court to factually determine the amount of claimant's entire loss, attorney fees and costs of recovery. Here, there is no need to do so. The United States District Court's determination that McMillan sustained total losses of $4,762,686 fulfills that purpose.

¶14 State Fund asserts that McMillan will receive a double recovery under this calculation of entire loss. It reasons that the largest component of the federal court's determination of damages is future medical expenses, and, because State Fund is statutorily required to pay lifetime medical benefits, McMillan "would be receiving double payment and a windfall for such damages."

¶15 State Fund's reasoning is incorrect. When McMillan has recovered the amount of his entire loss of $4.7 million plus costs of recovery, it may properly assert its subrogation interest. At that time, State Fund's obligation to pay lifetime medical benefits will cease, and McMillan will pay any continuing medical expenses from his third party recovery or other resources.

¶16 It is State Fund who would reap a windfall under its argument. McMillan's losses are $4.7 million, plus attorney fees and costs. He has recovered $2.7 million, plus the amounts paid by State Fund. If State Fund is allowed to cease payments now, the remaining loss would be borne by McMillan. "[T]he insurer has been paid for the assumption of the

liability for the claim, and . . . where the claimant has not been made whole, equity concludes that it is the insurer which should stand the loss, rather than the claimant." *Zacher*, 243 Mont. at 230, 794 P.2d at 338.

¶17 The *Zacher* formula does not contemplate a deduction from a claimant's entire loss for his or her comparative negligence. This is in accordance with the Workers' Compensation Act, which does not consider a claimant's fault in determining benefit eligibility. Reducing the calculation of McMillan's entire loss, and thus his eligibility for benefits, for his comparative negligence would introduce consideration of the claimant's fault into the workers' compensation system-a clear violation of the history, purpose and language of the Act.

¶18 The Workers' Compensation Court adhered precisely to the rules set forth in our prior holdings. Its decision is affirmed.

/S/ JIM RICE

We concur:

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART