FILED

09/02/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0204

DA 24-0204

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 194

MARK JOHNSON and MOLLY JOHNSON,
Husband and wife, individually and on behalf
of all others similarly situated,

      Plaintiffs and Appellants,

  v.

STATE FARM MUTUAL AUTOMOBILE INS. CO.
and STATE FARM FIRE AND CASUALTY CO.,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-15-934
Honorable Dan Wilson, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Judah M. Gersh, Brian M. Joos, Viscomi, Gersh, Simpson & Joos, PLLP,
          Whitefish, Montana

          Alan J. Lerner, Lerner Law Firm, Kalispell, Montana

          Allan M. McGarvey, McGarvey Law, Kalispell, Montana

      For Appellees:

          Dale R. Cockrell, Moore, Cockrell, Goicoechea & Johnson, P.C., Kalispell,
          Montana

          Jennifer M. Hoffman, Sheppard, Mullin, Richter & Hampton, LLP,
          Los Angeles, California

Submitted on Briefs:  October 16, 2024
Decided:  September 2, 2025

Filed:

_____
               Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1    Molly and Mark Johnson ("Johnsons") appeal the Eleventh Judicial District Court, Flathead County's March 6, 2023 Order on Defendants' Motion to Dismiss. The Johnsons appeal the District Court's holding that their made whole claims are non-justiciable and that their conversion claim is preempted.

¶2    We restate the issues on appeal as follows:

*Issue 1: Whether the Johnsons have pled sufficient facts to demonstrate that State Farm's subrogation caused a made whole injury.*

*Issue 2: Whether the Johnsons have pled sufficient facts to demonstrate that State Farm's subrogation constituted conversion of funds to which the Johnsons were entitled.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    On November 2, 2017, Molly Johnson was involved in a motor-vehicle accident with Brittanie Vanmeter. The Johnsons were insured at the time of the accident by State Farm Mutual Automobile Insurance Company ("State Farm"), which paid benefits to the Johnsons for all claimed property losses except for 10 music compact discs and a second set of snow tires. After paying on the Johnsons' property loss, State Farm asserted its right to subrogation from Vanmeter and her insurance company, GEICO Indem. Co. ("GEICO") for the amount paid to the Johnsons. GEICO reimbursed State Farm for its payments to the Johnsons.

¶4    On September 26, 2019, the Johnsons sued Vanmeter, State Farm, and State Farm Fire and Casualty Co. The Johnsons asserted several causes of action in their Complaint, premised on allegations that State Farm violated the made whole doctrine when it asserted

2

subrogation and collected the property insurance payments from GEICO before the Johnsons were made whole as to all their property losses. The Johnsons also asserted a cause of action for common law conversion, alleging that State Farm usurped their cause of action by collecting before the Johnsons could file their suit. State Farm removed the suit to federal court. The United States District Court remanded the suit for a lack of standing, holding that the Johnsons had not alleged sufficient facts to show that there was a substantial risk that they would be injured by not being made whole. *Johnson v. State Farm Mut. Auto. Ins. Co.*, 2020 U.S. Dist. LEXIS 149096, at *5 (D. Mont. Aug. 18, 2020).

¶5 On remand, the Johnsons filed a First Amended Complaint and State Farm moved to dismiss. On May 24, 2021, the District Court dismissed the made whole claims for lack of standing, finding that the Johnsons had not sufficiently alleged the amount of their outstanding property damage claims to demonstrate that State Farm's collection would prevent GEICO from making them whole. The District Court dismissed the conversion claim pursuant to M. R. Civ. P. 12(b)(1) because the Johnsons lacked standing based on the same causation issue and pursuant to M. R. Civ. P. 12(b)(6) because it was preempted by § 33-18-242(3), MCA.

¶6 On June 16, 2021, the Johnsons moved for leave to file a Second Amended Complaint to cure the lack of specificity in their damages allegations. The District Court denied the motion on August 20, 2021, finding that the amounts alleged in the Second Amended Complaint were insufficient to confer standing because they were too small to demonstrate that State Farm's collection would cause GEICO to be unable to make the

Johnsons whole. The Johnsons petitioned this Court for a writ of supervisory control, which we denied on the grounds that the Johnsons had not (1) "demonstrated . . . how State Farm's mere *preliminary assertion* of the *future right* to subrogation for the property loss compensation it previously paid to Johnsons ha[d] already reduced, or necessarily w[ould] reduce, the amount of compensation that they w[ould] ultimately be entitled to recover" or (2) "met their burden of showing that the court erroneously dismissed their related common law conversion claim . . . pursuant to § 33-18-242(3), MCA."

¶7 On August 15, 2022, the Johnsons filed a Third Amended Complaint. The Third Amended Complaint explained that the Johnsons had settled their claims against Vanmeter. That settlement included a payment from GEICO of $1,618, the full value the Johnsons had alleged in their Second Amended Complaint of the property damage State Farm had not covered. That payment was subject to the Johnsons' contingency fee agreement with their attorney, which was for a third of all recovery, meaning that the Johnsons paid roughly $539.33 from this portion of the settlement. The $1,618 payment in combination with the reimbursement already paid to State Farm, was less than GEICO's property damage coverage limit. The Third Amended Complaint clarified that the Johnsons' made whole claims were limited to "attorney fees associated with recovering . . . losses from the automobile accident tortfeasor," and that they only sought "credit for the made whole analysis on property damage for amounts that were not covered under the State Farm Mut. Auto. Ins. Co. Policy."[1]

---

[1] The settlement with Vanmeter and GEICO included a payment from GEICO of $25,000 for Molly Johnson's injuries suffered during the accident. The Johnsons do not appear to argue that

4

¶8      State Farm moved to dismiss the Third Amended Complaint, and the District Court granted the motion.  It held that the Johnsons still lacked standing to bring their made whole claims because, having settled for less than GEICO's property damage limit and having been barred from recovering attorney fees from GEICO, they could not prove that State Farm's collection on its subrogation rights had caused the Johnsons' inability to recover their attorney fees.  It held that the logic underlying its May 24, 2021 dismissal of the conversion claims still applied and dismissed those claims as restated in the Third Amended Complaint.

## STANDARD OF REVIEW

¶9      Whether a claim is non-justiciable for a lack of standing is a question of law we review de novo.  *Larson v. State*, 2019 MT 28, ¶ 16, 394 Mont. 167, 434 P.3d 241.  A district court's determination that a complaint has failed to state a claim for which relief can be granted pursuant to M. R. Civ. P. 12(b)(6) is a conclusion of law which we review for correctness.  *Scheafer v. Safeco Ins. Co.*, 2014 MT 73, ¶ 14, 374 Mont. 278, 320 P.3d 967.

## DISCUSSION

¶10     *Issue 1: Whether the Johnsons have pled sufficient facts to demonstrate that State Farm's subrogation caused a made whole injury.*

¶11     "Subrogation is the substitution of another person in the place of the creditor, so that the person substituted will succeed to the rights of the creditor in relation to the debt or claim, and is an act of the law growing out of the relation of the parties to the original contract of insurance, and the natural justice or equities arising from the fact that the insurer has paid the insured."

they are entitled to compensation from State Farm for the attorney fees they paid out of that portion of the settlement, so we do not consider that issue.

5

*Skauge v. Mt. States Tel. & Tel. Co.*, 172 Mont. 521, 526, 565 P.2d 628, 630-31 (1977) (quoting 16 Couch on Insurance 2d, Subrogation, § 61.92). Subrogation acts as an equitable device "designed to compel the ultimate payment of a debt by the one who in justice, equity and good conscience should pay it." *Skauge*, 172 Mont. at 524, 565 P.2d at 630. An insurer who has indemnified its insured usually is subrogated to the insured's rights of recovery against a third party who is responsible for the loss. *Skauge*, 172 Mont. at 524, 565 P.2d at 630. The policy underlying this equitable right of subrogation is that "absent repayment of the insurer the insured would be unjustly enriched by virtue of recovery from both the insurer and the wrongdoer, or in absence of such double recovery by the insured, the third party would go free despite his legal obligation in connection with loss." *Skauge*, 172 Mont. at 524-25, 565 P.2d at 630.

¶12      An insurer's right to subrogation is limited by the recognition that an insured is entitled to be fully compensated for his or her damages. Known as the "made whole doctrine," this principle was first explained in *Skauge*:

> When the sum recovered by the Insured from the Tort-feasor is less than the total loss and thus either the Insured or the Insurer must to some extent go unpaid, *the loss should be borne by the insurer[,] for that is a risk the insured has paid it to assume.*
>
> .   .   .
>
> [W]hen the insured has sustained a loss in excess of the reimbursement by the insurer, the insured is entitled to be made whole for his entire loss and any costs of recovery, including attorney's fees, before the insurer can assert its right of legal subrogation against the insured or the tortfeasor.

*Skauge*, 172 Mont. at 528, 565 P.2d at 632 (emphasis in original) (citations omitted).

¶13 State Farm argues that even if its collection of reimbursement from GEICO, before the Johnsons had a chance to recover the full amount of their property losses, violated the made whole doctrine, the Johnsons lack standing to sue over the violation because they cannot prove that the collection *caused* their inability to collect the attorney fees they incurred. Standing is a threshold requirement of justiciability applicable to all claims for relief as a matter of constitutional law and related prudential policy considerations. *Larson*, ¶ 45. A plaintiff has legal standing to assert an otherwise cognizable claim only if "(1) the claim is based on an alleged wrong or illegality *that has in fact caused, or is likely to cause*, the plaintiff to personally suffer specific, definite, and direct harm to person, property, or exercise of right and (2) the alleged harm is of a type that available legal relief can effectively alleviate, remedy, or prevent." *Larson*, ¶ 46 (emphasis added). A plaintiff must allege "a direct causal connection between the alleged illegality and specific and definite harm personally suffered, or likely to be personally suffered, by the plaintiff" to establish standing. *Larson*, ¶ 46.

¶14 The District Court articulated two reasons why the Johnsons could not establish a causal connection between State Farm's collection from GEICO and the Johnsons' inability to collect their attorney fees incurred to recover for their uncovered property damage claims: (1) the American Rule would have prevented the Johnsons from collecting attorney fees from GEICO no matter whether State Farm had been reimbursed or not and (2) the Johnsons settled for less than GEICO's property damage limit, so State Farm's reimbursement did not reduce the amount of money available to cover attorney fees. The

fundamental flaw with the District Court's reasoning is that it misconstrues the made whole analysis by focusing on the amount of money *available* for recovery from the third party rather than the *allocation* of the amount *actually recovered*. The made whole doctrine is not an exception to the American Rule that allows an injured party to recover their attorney fees from the third-party defendant. As our case law has made abundantly clear, the made whole doctrine is an equitable device meant to ensure that "when the insured has sustained a loss in excess of the reimbursement by the insurer, the insured . . . [recovers] his *entire loss* and any costs of recovery, *including attorney's fees*, *before* the insurer can assert its right of legal subrogation against the insured or the tortfeasor." *Skauge*, 172 Mont. at 528, 565 P.2d at 632 (emphasis added). The rationale for this rule is that an insured has already paid premiums to their insurer to assume the risk of loss so the insurer should not be the one to benefit from the insured's attorney's work. *See Skauge*, 172 Mont. at 528, 565 P.2d at 632.

¶15 We have consistently held over the years that an insured is entitled to collect attorney fees from the total amount recovered from a third-party tortfeasor, even when this means the first-party insurer is not reimbursed for the entire amount they paid to their insured. *DeTienne Assocs. Ltd. P'ship v. Farmers Union Mut. Ins. Co.*, 266 Mont. 184, 190, 879 P.2d 704, 708 (1994); *State Comp. Ins. Fund v. McMillan*, 2001 MT 168, ¶ 16, 306 Mont. 155, 31 P.3d 347; *Swanson v. Hartford Ins. Co.*, 2002 MT 81, ¶ 14, 309 Mont. 269, 46 P.3d 584. In *DeTienne*, a hotel suffered property damage when a "train derailed, exploded, and caused power outages" causing the hotel's "pipes to freeze and burst."

8

*DeTienne*, 266 Mont. at 186, 879 P.2d at 706. The hotel's insurer paid the limits of its policy, and both the hotel and the insurer sued the railway. *DeTienne*, 266 Mont. at 186, 879 P.2d at 706. The suits were consolidated, and at the litigation's conclusion the district court determined that the hotel was entitled to collect its attorney fees from the damages award even though it meant that the hotel's insurer would not be fully reimbursed for its payment to the hotel. *DeTienne*, 266 Mont. at 186-87, 879 P.2d at 706. In affirming the district court, we noted: "We used the word 'before' in *Skauge* to indicate that the paramount interest is that of the insured," and that any collection that did not leave enough money to cover the insured's attorney fees would be "akin to unjust enrichment." *DeTienne*, 266 Mont. at 190, 192, 879 P.2d at 708-09.

¶16     In *McMillan*, a worker, McMillan, was injured by a tree felled by his coworker while his employer was performing work for the United States government. *McMillan*, ¶ 3. McMillan filed a workers' compensation claim with his employer's insurer and a personal injury claim against the United States under the Federal Tort Claims Act. *McMillan*, ¶ 3. The United States was held liable for McMillan's injuries and the Montana State Workers' Compensation Fund ("State Fund") sought a determination from the Workers' Compensation Court that it could assert a subrogation claim against McMillan's recovery and cease paying his benefits. *McMillan*, ¶¶ 3-4. The Workers' Compensation Court held that, pursuant to the made whole doctrine, McMillan must recover the full amount of his damages *plus the cost of his suit* before State Fund was entitled to any subrogation. *McMillan*, ¶ 4. We affirmed the Workers' Compensation Court, holding:

> In determining whether a claimant has been made whole, the amounts received [from an insurer] . . . shall be added to the amounts otherwise received or to be received from third party claims, and also added to the costs of recovery, *including attorney fees*; and when that total equals claimant's entire loss, then the insurer shall be entitled to subrogation from all amounts received by the claimant *in excess of his entire loss*.

*McMillan*, ¶ 12 (emphasis added) (quoting *Zacher v. Am. Ins. Co.*, 243 Mont. 226, 231, 794 P.2d 335, 338 (1990)).

¶17 In *Swanson*, the Swansons were involved in a motor-vehicle accident and their insurer, Hartford Insurance Company of the Midwest ("Hartford"), paid some of their resulting medical claims but denied others. *Swanson*, ¶¶ 4, 6. Hartford contacted the insurer of the third-party tortfeasor, asserting its subrogation rights against any recovery the Swansons received. *Swanson*, ¶ 6. The third-party insurer sent a check to the Swansons payable to the Swansons and Hartford. *Swanson*, ¶ 7. Hartford refused to endorse the check until the Swansons filed an action against them. *Swanson*, ¶ 8. The Swansons settled their claims against the third-party tortfeasor for less than their actual damages, without any compensation for attorney fees or costs, and for less than the third-party insurer's coverage limits. *Swanson*, ¶ 9. The Swansons sued Hartford for a violation of the Unfair Claims Settlement Practices Act and the case was removed to federal court. *Swanson*, ¶ 10. The federal court certified the question to this Court: "Is it the public policy in Montana that an insured must be totally reimbursed for all losses as well as costs, *including attorney fees*, involved in recovering those losses *before* the insurer can exercise any right of subrogation, regardless of contract language to the contrary?" To that question, we answered "yes." *Swanson*, ¶ 14 (emphasis added).

¶18 State Farm's reliance on the American Rule as somehow countermanding the inclusion of attorney fees in a determination as to whether an insured has been made whole is misplaced. The American Rule provides that "absent a specific statutory or contractual provision, a prevailing party generally is not entitled to recovery of its attorneys' fees in prosecuting or defending the action." *W. Tradition P'ship v. AG of Mont.*, 2012 MT 271, ¶ 9, 367 Mont. 112, 291 P.3d 545. But as noted above, the American Rule has no application to the made whole doctrine. If State Farm was correct that the American Rule precludes insureds from collecting attorney fees from recoveries against third parties, we need not have decided *DeTienne*, *McMillan*, *Swanson*, or any of the half-a-dozen other cases upholding the rule we announced in *Skauge* decades ago and which we have consistently followed since. We need only have said in each of those cases that attorney fees were *not* included in calculating whether an insured has been made whole. Instead, we have repeatedly held exactly the opposite—that an insurer must wait in line for its insured to collect the full value of their losses *and* the costs of that collection, including attorney fees. This does not constitute an *award* of attorney fees to the insured, as the District Court erroneously reasoned; it is the recognition that if attorney fees are *subtracted* from what is indisputably the damage that the insured has incurred, then the insured has not been made whole. So if the insurer does not wait its turn to subrogate, and instead jumps the line to prematurely collect its reimbursement, it causes the insured to lose out on the costs of collection to which they are entitled, consistent with decades of this Court's precedents.

¶19    Nor do the third-party's coverage limits factor into an insured's entitlement to their costs of recovery, as our case law has conclusively established. In *Swanson*, the Swansons' settlement with the third-party did not exhaust the available insurance limits; yet we still found that they were entitled to recovery of their attorney fees before their insurer could subrogate. *Swanson*, ¶¶ 9, 14. In *McMillan* it would have been impossible for McMillan to exhaust the available resources of the United States government in his Federal Tort Claims Act suit; yet we still held that McMillan was entitled to recovery of his attorney fees before State Fund could subrogate. *McMillan*, ¶ 11. The made whole doctrine does not govern an insured's recovery from a third-party; it governs the allocation of risk between the insured and their insurer *after* all claims against the third party have been settled, irrespective of whether the third-party's policy limits have been exhausted. This is plain on the face of the formula we laid out in *Zacher*, which does not consider the amount available from a third party, but "the amounts otherwise *received or to be received* from third party claims, and also add[s] the costs of recovery, including attorney fees." *Zacher*, 243 Mont. at 231, 794 P.2d at 338.

¶20    But notwithstanding the District Court's misapplication of the made whole doctrine, "'[w]e will not reverse the District Court when it reaches the right result, even if for the wrong reason.'" *Hubbell v. Gull SCUBA Ctr., LLC*, 2024 MT 247, ¶ 24, 418 Mont. 399, 558 P.3d 1094 (quoting *Brookins v. Mote*, 2012 MT 283, ¶ 21, 367 Mont. 193, 292 P.3d 347). Citing our decision in *Van Orden v. United Servs. Auto Ass'n*, 2014 MT 45, 374 Mont. 62, 318 P.3d 1042, State Farm erroneously asserts that we have somehow authorized

12

premature subrogation in certain circumstances. State Farm mischaracterizes the *Van Orden* holding. In *Van Orden*, we held that the question of whether an insured has been made whole is analyzed with respect to each category of insurance coverage and where "damages are discrete, readily-ascertainable, and completely covered under a separate policy or portion of the policy for which a separate premium has been paid, subrogation may proceed as to that element of loss only." *Van Orden*, ¶ 25. Put another way, *Van Orden* does not permit an insurer to subrogate before an insured has been made whole as to all the damages for which the insurer has been paid to assume the risk of loss; however, after the insured has been made whole as to all the damages for which the insurer has been paid a premium, the insurer may seek subrogation as to any "discrete, readily-ascertainable" damages for which the insurer had *not* been paid to assume the risk of loss, regardless of whether the insured has been made whole as to those *uncovered* damages.

¶21    Although neither the District Court nor State Farm predicated their causation arguments on this specific aspect of the *Van Orden* holding, it is nevertheless dispositive. The Johnsons' Third Amended Complaint is, to say the least, not a model of clarity. But as best as can be discerned from both their Third Amended Complaint and their briefs on appeal, the only concrete loss the Johnsons attribute to State Farm's subrogation is the "fees and costs [incurred] in recovering the additional $1,618." But the Johnsons also acknowledge that the "$1,618 in property loss was not covered" by their State Farm policy. Consequently, the Johnsons had not paid State Farm a premium to assume the risk of

13

recovering those discrete damages from the third-party tortfeasor. Consistent with our holding in *Van Orden*, therefore, the costs and attorney fees the Johnsons incurred in recovering the additional $1,618 were not subject to the made whole doctrine.

¶22 The District Court erred when it determined that the American Rule had any impact on the Johnsons' made whole claims. The American Rule governs the appropriateness of an attorney fee award above and beyond a party's recovery while the made whole doctrine governs the allocation of a recovery award between an insured and their insurer. *Compare W. Tradition P'ship*, ¶ 8, *with Skauge*, 172 Mont. at 528, 565 P.2d at 632. The District Court also erred when it determined that the Johnsons' injuries were not caused by State Farm's subrogation when the Johnsons did not exhaust GEICO's policy limits because we have long held that an insured's right to be made whole does not depend on the third-party's policy limits or available resources. *See Swanson*, ¶¶ 9, 14; *McMillan*, ¶ 11. But we affirm the District Court's dismissal of the Johnsons' Third Amended Complaint because State Farm did not prematurely subrogate with respect to a category of damages it had been paid a premium to bear the risk of recovering.

¶23 *Issue 2: Whether the Johnsons' conversion claim is preempted by § 33-18-242(3), MCA.*

¶24 The Johnsons argue that the District Court erred when it dismissed their conversion claim pursuant to M. R. Civ. P. 12(b)(6) because it was preempted by § 33-18-242(3), MCA.[2] State Farm argues, and the Johnsons do not contest, that the Johnsons' conversion

---

[2] The Johnsons also argue that their prayer for declaratory relief is not preempted. We cannot locate in the record a decision of the District Court holding otherwise. The Johnsons point to a

claim is based on the same alleged injury as their made whole claims. Standing is a threshold requirement of justiciability applicable to *all claims*. *Larson*, ¶ 45. The insufficient causal allegations which doom the Johnsons' made whole claims also doom their conversion claim, which expressly incorporated the same factual allegations as the made whole claims. Therefore, we decline to address their argument that their conversion claim is not preempted by § 33-18-242(3), MCA.

## CONCLUSION

¶25 The District Court's March 6, 2023 Order is affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE

---

federal district court decision that suggests it may be, but that decision is not in this case, so we decline to address this argument.